UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| MARIE KRAFT, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 3:16-CV-15 |
| | § | |
| THE UNIVERSITY OF TEXAS | § | |
| MEDICAL BRANCH, *et al*, | § | |
| | § | |
| Defendants. | § | |

## **MEMORANDUM OPINION AND ORDER**

Plaintiff, Marie Kraft, has filed suit against her former employer, the University of Texas Medical Branch ("UTMB") and UTMB Healthcare Systems, Inc. ("UTMC-HCS"). UTMB-HCS is a wholly-owned subsidiary of UTMB. Kraft's live pleading, her First Amended Complaint, alleges that she was jointly employed by both entities and that they discriminated and retaliated against her in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"), the Age Discrimination in Employment Act (the "ADEA"), 29 U.S.C. § 621 et seq., and the Texas Labor Code. Dkt. 29.

The Court has previously dismissed Kraft's ADEA and the Texas Labor Code claims against UTMB for lack of subject matter jurisdiction. Now, both Defendants have moved for summary judgment on all of Kraft's remaining claims. Dkt. 63, Dkt. 64.

### BACKGROUND

In March 2008, when she was 51 years old, Kraft began working for The University of Texas Medical Branch Healthcare Services ("UTMB-HCS"), an entity that Kraft alleges is "a wholly owned subsidiary of The University of Texas Medical Branch

("UTMB")." Two and a half years later, in September 2010, Kraft was hired as the "Director of UTMB HealthCare Systems Clinical Staffing Solutions" ("UTMB-HCSS"), an entity that managed "the contingent labor pool"[1] for UTMB[2].

Kraft contends that, from the beginning of her time at UTMB, she was treated differently than male co-workers. She alleges that she was not offered a contract for her employment, but that male co-workers were offered contracts. She complains that she did not receive a performance evaluation from Connaughton for 2008, 2009, 2010, and 2011, even though she directly reported to him and even though UTMB had a policy requiring annual performance evaluations. Kraft alleges that male counterparts received annual performance evaluations during this time. The allegations in Kraft's complaint differ from those in her summary judgment responses, but it appears that, in 2012, Kraft met with Connaughton and she alleges that she "questioned the lack of reviews, promotional opportunities and disparity in compensation between herself and Mr. Connaughton's male reports." Shortly thereafter, Kraft received a pay raise, from $110,000 to $121,000 annually. But, eight months later, in April 2013, Kraft was called into a meeting with Connaughton and Ron McKinley, UTMB's Vice President of Human Resources. Kraft was told that she would now be reporting directly to McKinley. Kraft

---

[1] The United States Department of Labor defines "contingent work" as work done by "independent contractors and part-time, temporary, seasonal, and leased workers." See https://www.dol.gov/dol/aboutdol/history/reich/reports/dunlop/section5.htm.

[2] Kraft alleges that, after September 1, 2010, she was "jointly employed" by UTMB and UTMB-HCS. Although she describes her position as "with UTMB," she nonetheless contends that she reported directly to David Connaughton, President and CEO of UTMB-HCS. She also contends that her salary was paid by UTMB, but that UTMB was wholly reimbursed for that cost by UTMB-HCS.

alleges that this change was a "demotion," because Connaughton was President and CEO of UTMB-HCS while McKinley was a Vice President, and she was now "the only director/executive who reported to a non-officer of UTMB-HCS." Kraft also was required to meet weekly with McKinley, even though she had not previously met with Connaughton on a weekly basis.

Kraft quickly began to again complain of "harassment and hostile work environment," as well as "retaliation," from Connaughton and McKinley. Her summary judgment response describes numerous "complaints" she says she filed in May 2013, June 2013, August 2013, February 2014, April 2014, and May 2014.

In February 2014, Kraft met with Connaughton to review the upcoming fiscal year and discuss her salary. In April 2014, Kraft indeed received a raise to a new annual salary of $170,000. She also received a new title, "Executive Director of Healthcare Systems Staffing." But she complains that the amount of the raise was less than what she had discussed with Connaughton in February 2014, and she also complains that McKinley told her the new title was "not considered a promotion."

On May 22, 2014, Kraft complained to the President of UTMB, David Callender, who was the Chairman of UTMB's Compliance Committee, that she was experiencing discriminated because of her age and gender, and she specifically raised issues of "gender discrimination and pay disparity, harassment[,] and retaliation." Kraft complains that her allegation was handled internally, with Carrie King, a Senior Vice President of UTMB Legal being appointed to serve as her interim supervisor. King's supervision was too close for Kraft's comfort, and Kraft complained in May 2014 to King about the

"increased surveillance activities to which [Kraft] was being subjected since filing a complaint."

In the next few months, Kraft met with outside counsel for UTMB, who had been tasked with investigating Kraft's allegations of discrimination and retaliation. Kraft contends the investigation was not properly conducted, and she herself was attacked personally for being "abrasive."

By the end of July 2014, Kraft herself had been accused of retaliatory conduct and other inappropriate actions. One of Kraft's subordinates, Stephanie Haynes, accused Kraft of favoring another employee in the department, Gerald Cagle, and allowing him to create a hostile work environment by using profanity and aggressive and offensive behavior. Haynes reported that Kraft had discouraged her from reporting Cagle's behavior to HR and that Kraft had failed to address the problem. Using an outside lawfirm, UTMB began an investigation into the allegations against Kraft and Cagle, ultimately compiling two reports detailing the investigation, and factual findings, about Kraft's misconduct.

On Wednesday, August 6, 2014, Kraft was put on Administrative Leave with Pay. On August 10, 2014, Kraft filed a formal grievance with UTMB. On August 20, 2014, Kraft filed a charge of discrimination with the EEOC. On August 26, 2014, UTMB's outside counsel issued a report on the investigation regarding Kraft. That report concluded that, "[b]ased on the information gathered during the Investigation, Ms. Kraft violated the Conduct Guide and UTMB's Non Retaliation policy. . .Ms. Kraft not only threatened to terminate Ms. Hayes based solely on the fact that she complained to Human

Resources, but following her complaint, Ms. Kraft tried to coerce Ms. Hayes into retracting the complaint." Dkt. 63, Exhibit 19. The report also found that "there is some evidence that Ms. Kraft failed to properly supervise the HCSS employees. Notwithstanding numerous complaints about Mr. Cagle, Ms. Kraft refused to investigate the complaints or take any action against Mr. Cagle. In addition, several employees reported that profanity is common in the department, and Ms. Kraft uses profanity. Specifically, UTMB's Discipline Dismissal and Appeal for Classified Employees policy provides that disciplinary action, including dismissal, may be imposed for unacceptable conduct, including "disorderly conduct, harassment of other employees (including sexual harassment), or use of abusive language on the premises. Ms. Kraft could not and did not enforce UTMB's policy because, like and according to her employees, Ms. Kraft actually violated the policy." The report also listed other instances of misbehavior, including violating UTMB policies regarding her subordinate's salaries or job titles, and failing to adhere to rules regarding leave time and working hours. Therefore, the report recommended, in light of "UTMB's policies and prior action, [Kraft] be subjected to severe disciplinary action, up to and including termination."

On September 2, 2014. UTMB issued a "Notice of Intent to Terminate," stating that, based upon the findings in the investigation, Kraft's employment would be terminated. The Notice particularly highlighted the finding that Kraft had discouraged employees from filing HR complaints, had failed to contact HR regarding complaints of employee misconduct that she received, failed to properly address reported concerns about abusive language by staff, failed to HR's established processes for title

reclassifications or salary determinations, and engaged in "inappropriate behavior that could be perceived as retaliatory. . . . [making] threatening comments to terminate the employee who lodged the initial complaint." Kraft contends that the reasons given for her termination "are a pretext to cover up the unlawful discrimination and retaliation to which [she] was subjected by UTMB."

## APPLICABLE LAW

### A. Summary Judgment Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). A genuine dispute of material fact exists if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Royal v. CCC & R Tres Arboles, L.L.C.*, 736 F.3d 396, 400 (5th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). The Court "must view all facts and evidence in the light most favorable to the non-moving party." *Feist v. La., Dep't of Justice, Office of the Att'y Gen.*, 730 F.3d 450, 452 (5th Cir. 2013) (quoting *Juino v. Livingston Par. Fire Dist. No. 5,* 717 F.3d 431, 433 (5th Cir. 2013)).

If the summary judgment movant produces evidence tending to show that there is no genuine dispute of material fact, the nonmovant must then direct the court's attention to evidence in the record sufficient to establish the existence of a genuine dispute of material fact for trial. *Celotex*, 477 U.S. at 321–323. The nonmovant must "go beyond the

pleadings and by [his] own affidavits, or by depositions, answers to interrogatories and admissions on file, designate specific facts showing that there is a genuine issue of material fact for trial." *Giles v. General Elec. Co.*, 245 F.3d 474, 493 (5th Cir. 2001), citing *Celotex*, 477 U.S. at 324. Further, the party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). "If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted." *Celotex*, 477 U.S. at 322-23.

Importantly, summary judgment cannot be defeated through "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation." *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002). Additionally, allegations in a plaintiff's complaint are not evidence. *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996) ("[P]leadings are not summary judgment evidence."); *Johnston v. City of Houston, Tex.*, 14 F.3d 1056, 1060 (5th Cir. 1995) (for the party opposing the motion for summary judgment, "only evidence—not argument, not facts in the complaint—will satisfy the burden"), *citing Solo Serve Corp. v. Westown Assoc.*, 929 F.2d 160, 164 (5th Cir. 1991); *see also Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc) ("[C]onclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden."); *Grizzle v. Travelers Health Network, Inc.*, 14 F.3d 261, 268 (5th Cir. 1994)

(noting that an employee's "self-serving generalized testimony stating her subjective belief that discrimination occurred ... is simply insufficient to support a jury verdict in plaintiff's favor"); *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1266 (5th Cir. 1991) ("Summary judgment, to be sure, may be appropriate, '[e]ven in cases where elusive concepts such as motive or intent are at issue, ... if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." (quoting *Medina–Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990)) (alteration in original)).

Further, as noted above, parties have the obligation to specifically point out the evidence upon which they rely. Rule 56(c)(1) provides that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record." FED. R. CIV. P. 56(c)(1)(A); *Am. Fam. Life Assur. Co. of Columbus v. Biles*, 714 F.3d 887, 896 (5th Cir. 2013). Under Rule 56(c)(3), "[t]he court need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3). The Fifth Circuit has explained that, "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006); *see also Nissho–Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1307 (5th Cir. 1988) (concluding that a deposition "was never made part of the competent summary judgment record before the district court" because the party opposing summary judgment "failed to designate, or in any way refer to, the deposition as the source of factual support" for its response to the summary judgment motion).

## B. Title VII

Title VII prohibits an employer from discriminating based on "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Title VII also provides that it is unlawful for employers to retaliate against employees who have opposed discrimination or who have participated in actions that are considered "protected activities" under the statute. *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 269 (2001).

Kraft's claim for gender discrimination under Title VII requires her to show that she (1) is a member of a protected class; (2) was qualified for the position; (3) was subject to an adverse employment action; and (4) was replaced by someone outside the protected class, or, in the case of disparate treatment, shows that other "similarly situated" employees outside of the class were treated more favorably. *See, e.g., Bryan v. McKinsey & Co.*, 375 F.3d 358, 360 (5th Cir. 2004).

To establish a claim for retaliation under Title VII, Kraft must show that: "(1) [she] engaged in activity protected by Title VII; (2) the employer took adverse employment action against [him]; and (3) a causal connection exists between that protected activity and the adverse employment action." *Zamora v. City of Houston*, 798 F.3d 326, 331 (5th Cir. 2015).[3] An employee has engaged in protected activity under

---

[3] Prior to the Supreme Court's decision in *Burlington Northern & Santa Fe Railway v. White*, 548 U.S. 53 (2006), the Fifth Circuit "held that only 'ultimate employment decisions' ... satisf[ied] the 'adverse employment action' element of a prima facie case of retaliation" under Title VII. *Wheat v. Florida Parish Juvenile Justice Com'n*, 811 F.3d 702, 706 at n.1 (5th Cir. 2016) (citations omitted). *Burlington Northern*, however, expanded the types of actions that can qualify as retaliatory, holding that an adverse action must merely be "materially adverse" to a plaintiff, which the Court defined as "harmful to the point that [such an action] could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Id.* (quoting *Burlington Northern*, 548 U.S. at 57). This is an objective test, requiring a legal inquiry

Title VII if she has (1) "opposed any practice made an unlawful employment practice by this chapter," or (2) "made a charge, testified, assisted, or participated in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a); *see also Byars v. Dallas Morning News, Inc.*, 209 F.3d 419, 427-28 (5th Cir. 2000).

Where a plaintiff does not present direct evidence of discrimination, Title VII claims proceed under the *McDonnell Douglas* framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). First, the plaintiff must make a prima facie showing of discrimination. *See Cannon v. Jacobs Field Servs. N. Am., Inc.*, 813 F.3d 586, 590 (5th Cir. 2016). Next, the burden shifts to the employer to "articulate a legitimate, nondiscriminatory reason for the adverse employment action." *Id.* (quoting *E.E.O.C. v. Chevron Phillips Chem. Co., LP*, 570 F.3d 606, 615 (5th Cir. 2009)). Finally, the burden shifts back "to the plaintiff to produce evidence from which a jury could conclude that the employer's articulated reason is pretextual." *Id.* The plaintiff must then prove "that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Squyres v. Heico Cos., L.L.C.*, 782 F.3d 224, 231 (5th Cir. 2015). "That is, the plaintiff may attempt to establish that he was the victim of intentional discrimination 'by showing that the employer's proffered explanation is unworthy of credence.'" *Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 143, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). "[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is

---

into whether, in context, "a company's conduct well might dissuade a 'reasonable' worker from engaging in protected conduct." *Halliburton, Inc. v. Administrative Review Bd.*, 771 F.3d 254, 261 (5th Cir. 2014).

false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Reeves*, 530 U.S. at 147—48, 120 S.Ct. 2097.

"A plaintiff may establish pretext either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or 'unworthy of credence.'" *Thomas v. Johnson*, 788 F.3d 177, 179 (5th Cir. 2015) (quoting *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003)). To show disparate treatment, a plaintiff must establish that his employer treated her more harshly than "similarly situated" employees for "nearly identical" actions. *See Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009). But "the conduct at issue is not nearly identical when the difference between the plaintiff's conduct and that of those alleged to be similarly situated account for the difference in treatment received from the employer." *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 221 (5th Cir. 2001); *see also Okoye v. Univ. of Tex. Hous. Health Sci. Ctr.*, 245 F.3d 507, 514 (5th Cir. 2001) (plaintiff was not "nearly identical" to other employees who had never engaged in the conduct triggering termination).

## ANALYSIS

### A. Kraft's Claims under Title VII

#### 1. Gender Discrimination

Defendants concede that Kraft has established three of the four required elements of her *prima facie* case under Title VII: (1) Kraft is a female and therefore a member of a protected class; (2) Kraft was qualified for her position; and (3) Kraft was terminated, an adverse employment action. But they contend that she has failed to satisfy the fourth

prong of her prima facie case because she cannot establish that others "similarly situated" were treated more favorably.

Kraft alleges that she was terminated[4] because of her gender. But she does not identify any similarly situated males who were treated differently under "nearly identical circumstances." *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009) ("[W]e require that an employee who proffers a fellow employee as a comparator demonstrate that the employment actions at issue were taken under nearly identical circumstances."). In this context, "[t]he employment actions being compared will be deemed to have been taken under nearly identical circumstances when the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories." *Heggemeier v. Caldwell Cty., Texas*, 826 F.3d 861, 868 (5th Cir. 2016); *see also Bryant v. Compass Group USA Inc.*, 413 F.3d 471, 478 (5th Cir. 2005); *Daniels v. BASF Corp., 270 F. Supp.* 2d 847, 853–54 (S.D. Tex. 2003) (finding plaintiff could not establish discrimination where there was no evidence that comparator employee experienced the same performance problems as plaintiff).[5]

---

[4] Although Kraft was evidently unhappy with many of the actions taken by her employer during the time period, the vast majority of the things she complains about are not "adverse employment actions." Adverse employment actions include only ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating. *See, e.g., King v. Louisiana,* 294 Fed. App'x. 77, 84-85 (5th Cir. 2008) (per curiam) ("Our discrimination jurisprudence has held that poor performance evaluations, unjust criticism, and being placed on probation do not constitute 'ultimate employment decisions.'") (citing *McCoy v. City of Shreveport*, 492 F.3d 551, 556–57 (5th Cir. 2007)); *Roberson v. Game Stop/Babbage's*, 152 Fed. App'x. 356, 360 (5th Cir. 2005) (per curiam).
[5] The Court has reviewed the summary judgment evidence to which Kraft's Response points. Perhaps hoping to create a fact issue out of thin air, Kraft's Response to the Defendants'

Even more fatal to Kraft's claims, Defendants have advanced a legitimate, non-discriminatory reason for Kraft's termination, and Kraft fails to raise a genuine dispute of material fact showing that this is a mere pretext for discrimination. Defendant's burden at this stage is "one of production, not persuasion" and involves "no credibility assessment." *Heinsohn v. Carabin & Shaw, P.C.,* 832 F.3d 224, 236 (5th Cir. 2016) (internal citation and quotation marks omitted). The burden thus shifts back to Kraft to demonstrate that Defendants intentionally discriminated against her.

### 2. Retaliation

It is a violation of Title VII for "an employer to discriminate against any of his employees . . . because he has opposed any employment practice made an unlawful employment practice . . . or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). To establish a prima facie case of retaliation, Plaintiff must show as follows: (1) she engaged in an activity protected by the applicable statutes; (2) she was subject to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse employment action. *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 319 (5th Cir. 2004); *Perez v. Region 20 Educ. Svc. Ctr.*, 307 F.3d 318, 325 (5th Cir. 2002). The employment action must be "materially adverse," one that would "dissuade a reasonable worker from making or supporting a charge of

---

summary judgment motion and her accompanying exhibits took up an astonishing 1273 pages. Her most-cited exhibit, however, is her own unsigned Declaration, single-spaced but still over 20 pages long. Kraft also includes a signature page for this Declaration, as a completely separate exhibit. Even taken together, Kraft's Declaration is wholly conclusory and is not valid summary judgment evidence.

discrimination." *Burlington Northern & Santa Fe Ry. Co. v. Whit*e, 548 U.S. 53, 68 (2006). A plaintiff alleging his employer retaliated against him because of his opposition to employment discrimination under Title VII must show "but for" causation, *i.e.,* that "that the desire to retaliate was the but-for cause of the challenged employment action." *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 133 S.Ct. 2517, 2528 (2013). Once this prima facie burden is met, retaliation claims utilize the same McDonnell-Douglas burden-shifting approach.

In the retaliation context, the Fifth Circuit has stated that a performance improvement plan ("PIP") might be the kind of "materially adverse action" on which a plaintiff may base his retaliation claim. *Ray v. Tandem Computs., Inc*., 63 F.3d 429, 435 (5th Cir. 1995) (holding that PIP and termination of employment were adverse employment actions); see also *Pollak v. Lew*, No. H-11-2550, 2013 WL 1194848, at *9 (S.D. Tex. Mar. 22, 2013), aff'd, 542 Fed. App'x. 304 (5th Cir. 2013) (finding placement on a PIP could dissuade a reasonable employee from engaging in protected activity). But, "written warnings and unfavorable performance reviews are not adverse employment actions where colorable grounds exist for disciplinary action or where the employee continues to engage in protected activity." *Jackson v. Honeywell Int'l, Inc.,* 601 Fed. App'x. 280, 286 (5th Cir. 2015) (citing *Burlington*, 548 U.S. at 68).

In both her complaint and her summary judgment response, Kraft uses words such as "complaint," "harassment," and "retaliation" in their very broadest sense. The Court will construe her pleadings at the broadest level, and will construe the summary judgment record in her favor, and read her allegations as stating that her termination, the

investigation that led to it, the heightened level of supervision she received, her allegedly insufficient raises, and her dissatisfaction with her job title and chain of command were adverse employment actions taken in retaliation for complaints she says she filed in May 2013, June 2013, August 2013, February 2014, April 2014, and May 2014.[6] But the evidence that Defendants point to in their own summary judgment motions and briefing demonstrates that each of these decisions were based upon a legitimate, non-discriminatory reason. Indeed, even Kraft's Amended Complaint notes that she was counselled on getting along with her superiors and her co-workers, even before she began filing complaints. Her own allegations follow a pattern of infraction or perceived infraction, correction, then a complaint from Kraft—not a chain in which complaints came first and the chain of causation resulted in adverse employment actions or retaliations.

Further, the summary judgment record shows that Kraft's termination was supported by a factual investigation, noted and reported deficiencies in performance, and that termination was recommended as being proportionate in light of the severity of the deficiencies in Kraft's performance. While she herself no doubt believes that she was "targeted," there is simply not a scintilla of competent summary judgment evidence that she has pointed to that shows Defendants' proffered reasons are a pretext.

In addition, Kraft fails to bring forth enough summary judgment evidence to create a genuine dispute of material fact as to whether her alleged protected activities were the "but for" cause of the adverse employment actions.

Accordingly, the Court finds that summary judgment for the Defendants on Kraft's Title VII claims is appropriate, and Defendants' motions for summary judgment on Kraft's Title VII claims are hereby **GRANTED**.

## B. Kraft's Claims under the ADEA

The ADEA makes it "unlawful for an employer ... to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." *Nicholson v. Securitas Sec. Services USA, Inc.*, 830 F.3d 186, 188–89 (5th Cir. 2016) (quoting 29 U.S.C. § 623(a)(1)). As in the Title VII context, a plaintiff may prove his ADEA claim with either direct or circumstantial evidence. If the claim is based on circumstantial evidence, courts use the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). If plaintiff can establish a prima facie case of discrimination because of her age, then the burden shifts to the defendant to provide a legitimate, non-discriminatory reason for the employment decision. *Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 (5th Cir. 2010)). Ultimately, "[w]hen a plaintiff alleges disparate treatment, 'liability depends on whether the protected trait (under the ADEA, age) actually motivated the employer's decision.'" *Reeves*, 530 U.S. at 141, 120 S.Ct. 2097. In other words, "[a] plaintiff must prove by a preponderance of the evidence (which may be direct or circumstantial), that age was the 'but-for' cause of the challenged employer decision." *Palacios v. City of Crystal City, Tex.,* 634 Fed. App'x. 399, 402 (5th Cir. 2015) (citing *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177–78, 129 S.Ct. 2343, 174 L.Ed.2d 119 (2009)).

Kraft has wholly failed to carry even her prima facie case at this stage. There is simply no mention of age in this case, and there is not even a scintilla of competent summary judgment evidence to raise a genuine issue of material fact as to her age was the but-for cause of any action taken against her. Nor, as noted above, does she point to any evidence in her response that would support a jury's finding that the Defendants' proffered explanations for the adverse actions are false or unworthy of credence. Indeed, Kraft's response to the Defendants' motion for summary judgment devotes exactly two sentences to this claim, and fails to cite to any part of the summary judgment record.

### C. Kraft's Claims under the Texas Labor Code

The Texas Labor Code prohibits an employer from using "race, color, disability, religion, sex, national origin, or age" as a basis to fail or refuse to hire an individual, discharge an individual, or "discriminate in any other manner against an individual in connection with compensation or the terms, conditions, or privileges of employment." Tex. Labor Code Ann. § 21.051 (West). As with the earlier claims, after considering the summary judgment record and the briefing of the parties, the Court finds that Kraft has failed to present enough evidence to raise a genuine dispute of material fact and summary judgment is appropriate on this claim as well.

## CONCLUSION

After full consideration of the relevant summary judgment evidence, the record in this case, the motions and briefing of the parties, and the applicable law, the Court finds that the motions for summary judgment filed by Defendants (Dkt. 63, 64) should be **GRANTED**.

**ALL OTHER PENDING MOTIONS ARE DENIED AS MOOT.**

SIGNED at Galveston, Texas, this 8th day of March, 2018.

_____
George C. Hanks Jr.
United States District Judge